## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Action No. 14-cv-01532-REB

RAUL ARTURO ANDUJO-ANDUJO,

      Petitioner,

v.

JOHN LONGSHORE, Field Director, Immigration and Customs Enforcement;
JEH JOHNSON, Secretary of the Department of Homeland Security;
JOHN MORTON, Director for Immigration and Customs Enforcement; and
ERIC HOLDER, Attorney General, United States of America;

      Respondents.

---

## TEMPORARY RESTRAINING ORDER

---

**Blackburn, J.**

      The matter before me is the **Plaintiffs' Motion For Temporary Restraining Order, Preliminary Injunction, and Order To Show Cause** [#2][1] filed May 30, 2014. Addressing only the request for a temporary restraining order, the respondents filed a response [#8], and the petitioner filed a reply[#10].  On June 13, 2014, I held a hearing on the request for a temporary restraining order at which I received argument from the petitioner and the respondents.  To the extent the petitioner seeks a temporary restraining order, the motion is granted. I reserve ruling on the request of the petitioner for a preliminary injunction and an order to show cause.

---

[1] "[#2]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## I.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 2241(habeas corpus) and 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

A party seeking a temporary restraining order or preliminary injunction must show: (1) that the movant has a substantial likelihood of eventual success on the merits; (2) that the movant will suffer imminent and irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest.  *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (irreparable injury must be imminent).  In addition, a party seeking a temporary restraining order also must demonstrate clearly, with specific factual allegations, that immediate and irreparable injury will result absent a temporary restraining order.  FED. R. CIV. P. 65(b).

When the moving party has established that the three harm factors tip decidedly in the movant's favor, the probability of success requirement is somewhat relaxed, and the movant need only show questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation. *Nova Health Systems v. Edmondson* 460 F.3d 1295, 1298 n. 6 (10th Cir. 2006).  On the other hand, some types of temporary restraining orders or preliminary injunctions are disfavored and, therefore, require the plaintiff to satisfy a heightened burden of showing that the four primary factors

weigh heavily and compellingly in movant's favor before such an injunction may be issued.  The heightened burden applies to preliminary injunctions that (1) disturb the status quo, (2) are mandatory as opposed to prohibitory, or (3) provide the movant substantially all the relief he may recover after a full trial on the merits.

*Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001) (internal quotation and citation omitted).

I conclude that the heightened burden of proof described in *Kikumura* is applicable in this case.  The petitioner seeks a temporary restraining order that is mandatory, as opposed to prohibitory, and a temporary restraining order would provide the petitioner with substantially all of the relief he seeks in this case.

## III.  BACKGROUND

The petitioner, Raul Arturo Andujo-Andujo, is a lawful permanent resident of the United States. In June 2010, Mr. Andujo[2] was convicted in Colorado state court of felony possession of marijuana with intent to distribute, a violation of §18-18-406(8)(b)(i), C.R.S.  He was sentenced to two years in prison.  On January 5, 2011, he was released from prison and placed on parole.  He was discharged from parole on March 5, 2013.

On February 3, 2014, Mr. Andujo was arrested in Morgan County, Colorado. Bond was set for Mr. Andujo, but he remained in custody because, on February 5, 2014, U.S. Immigration and Customs Enforcement (ICE) lodged an immigration detainer against Mr. Andujo.  On April 9, 2014, Mr. Andujo pled guilty to misdemeanor harassment and was sentenced to 18 months probation.  One day later, April 10, 2014, ICE took physical custody of Mr. Andujo.  Mr. Andujo requested a bond hearing, but an

---

[2]  In his papers, counsel for the petitioner refers to the petitioner as "Mr. Andujo."  I adopt that convention.

immigration judge denied the request, concluding that Mr. Andujo is "not eligible for

bond." *Order* [#2-4].  Mr. Andujo remains in custody without bond, and there is no

indication that ICE will grant him a bond hearing.

Given the circumstances described above, the government contends Mr. Andujo

is subject to mandatory detention, with no right to a bond hearing, under 8 U.S.C. §

1226(c).  Mr. Andujo contends § 1226(c) is not applicable to him and, as a result, he

has a statutory right to a bond hearing under § 1226(a).  Mr. Andujo seeks an order

from this court requiring ICE to provide him with a bond hearing under § 1226(a).

## IV.  ANALYSIS

To obtain a temporary restraining order, Mr. Andujo must establish each of the

four factors outlined above.  In this case, the substantial likelihood of success factor

requires an analysis and interpretation of § 1226, the statute which controls the current

detention of Mr. Andujo.  With that analysis in place, the other factors require only brief

analysis.

### A.  Substantial Likelihood of Success

Mr. Andujo's request for a temporary restraining order hinges primarily on the

interpretation of 8 U.S.C. § 1226, the statute under which Mr. Andujo currently is

detained.  If Mr. Adndujo's interpretation is correct, then Mr. Andujo has a substantial

likelihood of success on the merits of his claim.  A brief review of § 1226 is necessary to

a proper interpretation of the statute.

Subsection (a) of § 1226 provides that the Attorney General may arrest and

detain an alien pending a decision on whether the alien is to be removed from the

country.  Under subsection (a)(2), the Attorney General may release such an alien on a

bond of at least 1,500 dollars with security and conditions prescribed by the Attorney

General.  Under subsection (b), the Attorney General may revoke the bond of an alien at any time, re-arrest the alien, and detain the alien.  Subsection (a) provides the general rule that aliens detained pending removal proceedings are entitled to a bond hearing.

However, subsection (c)(1) of § 1226 creates an exception to the general rule of subsection (a).  Under subsection (c)(1), the Attorney General is required to take into custody aliens who fall within four specific categories specified in that subsection.  The four categories include aliens who have committed certain criminal offenses specified in subsection (c)(1)(A) through (C), and aliens who are involved in or likely to engage in terrorist activities, as specified in subsection (c)(1)(D).  Under subsection (c)(1), the Attorney General "shall take into custody any alien" who fits any of the categories specified "when the alien is released."  When an alien is detained under subsection (c)(1), the alien has no statutory right to a bond hearing.  Rather, subsection (c)(2) describes the very limited circumstances in which an alien detained under subsection (c)(1) may be released.  The provisions of subsection (c)(2) are not at issue in this case.

Because the language of subsection (c)(1) is the lynchpin of the claim of the petitioner, I quote that language in full:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who –

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

> > (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
> >
> > (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (emphasis added).  The phrase underlined above, "when the alien is released," is the key phrase at issue in this case.

The government contends Mr. Andujo is subject to removal under 8 U.S.C. § 1227(a)(2)(B)(i), which provides for removal of aliens convicted of a violation of any law relating to a controlled substance.  The conviction of Mr. Andujo for felony possession of marijuana with intent to distribute is a conviction that falls within § 1227(a)(2)(B)(i).   In the view of the government, because Mr. Andujo is subject to removal under § 1227(a)(2)(B)(i), he is subject to mandatory detention without a bond hearing under §1226(c)(1)(B).

Mr. Andujo does not dispute that he is subject to removal under § 1227(a)(2)(B)(i).  However, Mr. Andujo notes that ICE did not detain him when he was released from prison after he served the prison sentence imposed on his conviction for felony possession of marijuana with intent to distribute.  Rather, Mr. Andujo was released from prison on January 5, 2011, and  ICE first asserted a right to take custody of Mr. Andujo on February 5, 2014, when ICE filed a detainer against Mr. Andujo. The ICE detainer was filed more than three years after Mr. Andujo was released from prison.

In the view of Mr. Andujo, the mandatory detention provisions of subsection (c)(1) are applicable only when the alien is detained by ICE "when the alien is released" from

custody on the underlying criminal conviction which makes the alien subject to removal. If the "when the alien is released" requirement of subsection (c)(1) is not satisfied, Mr. Andujo asserts, an alien cannot be subject to mandatory detention under subsection (c)(1) because the alien does not fit the category of aliens defined specifically in subsection (c)(1). In this circumstance, he contends, the alien may be detained only under subsection (a), which entitles him to a bond hearing under subsection (a).

In contrast, the government argues that mandatory detention under subsection (c)(1) is authorized and proper even when, as in this case, the alien is not detained "when the alien is released" from custody based on the underlying criminal conviction. In the view of the government, a gap between the release of the alien and the detention of the alien by ICE does not deprive ICE of the authority to impose mandatory detention under subsection (c)(1).

Resolution of this issue begins with an interpretation of the language of subsection (c)(1), specifically the meaning of the phrase "when the alien is released." When interpreting a statute, the starting point always is the language of the statute itself. *In re Stephens*, 704 F.3d 1279, 1283 (10th Cir. 2013). If the language is clear and unambiguous, the plain meaning of the statute controls. *Id*. A court "must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, . . . judicial inquiry is complete." *Comm. Nat'l Bank v. Germain*, 503 U.S. 249, 253 - 254 (1992) (citations and quotations omitted). On the other hand, if the text of the statute is ambiguous, i.e. capable of being understood by reasonably well-informed persons in two or more different senses, further inquiry must be made to discern the intent of Congress.

*Stephens*, 704 F.3d at 1283.

In this case, I conclude that the language of subsection (c) is clear and unambiguous; thus, the plain meaning of that language controls.  As used in the adverbial phrase "when the alien is released," the word "when" is an adverb modifying the verb "released."  In this grammatical context, the word "when" means a point in time at which an event occurs.  This meaning of the word "when" in this context is consistent with the primary definitions of the word "when," used as an adverb, in commonly used dictionaries.  *See, e.g., Webster's Third New International Dictionary of the English Language - Unabridged* 1971, p. 2602; *Webster's Unabridged Dictionary of the English Language* 2001, p. 2164.  The plain language of subsection (c)(1) requires immigration officials to detain an alien at a specific point in time, the time the alien is released from custody on an underlying conviction, if immigration officials seek to use the mandatory detention authority available under subsection (c)(1).  In contrast, if an alien is detained some time after his or her release, the detention does not occur "when the alien is released," and the alien does not fall within the class of aliens subject to mandatory detention under subsection (c)(1).

The respondents argue that the phrase "when the alien is released" is ambiguous. Specifically, they contend there is a structural ambiguity in subsection (c). As a result of these ambiguities, the respondents assert, further efforts to interpret subsection (c)(1) are necessary.  I disagree.  For the reasons noted above, I conclude that the meaning of the adverbial clause "when the alien is released," as used in subsection (c)(1), is clear and unambiguous on its face.  When interpreting a statute, a court need not "overturn[ ] linguistic rocks and brush, in the hope of discovering some

arguable ambiguity" which would necessitate further interpretation or deference to administrative interpretation. ***See Abbott Labs. v. Young***, 920 F.2d 984, 994-95 (D.C. Cir. 1990).

Arguing that subsection (c)(1) is ambiguous, the respondents argue that the intent of Congress must be examined to determine the proper meaning of subsection (c)(1). That intent, the respondents contend, was to require mandatory detention under subsection (c)(1) for all criminal aliens no matter when they are detained. According to the respondents, Congress did not intend to limit mandatory detention under subsection (c)(1) only to circumstances when immigration authorities detain an alien at the point in time "when the alien is released."[3] Because the language of the a statute is pellucid, an examination of congressional intent is not proper. A court "must presume that a legislature says in a statute what it means and means in a statute what it says there." ***Comm. Nat'l Bank v. Germain***, 503 U.S. 249, 253 - 254 (1992) (citations and quotations omitted). Given the clear language of subsection (c)(1), that presumption applies here.

Even if the meaning of "when the alien is released" is clear on its face and is read to mean the point in time when the alien is released, the respondents contend, that temporal limitation does not mean that immigration authorities lose the power to enforce mandatory detention under subsection (c)(1) when a criminal alien is detained long after release. In a different context, the United States Court of Appeals has termed this approach "the better-late-than-never principle." ***U.S. v. Dolan***, 571 F.3d 1022, 1027

---

[3] As United States District Judge Raymond P. Moore has noted, "(h)ad Congress intended that certain aliens be arrested and detained 'in the event of' release, any number of more obvious terms would have accomplished that result, including 'once,' 'after,' or 'if.'" ***Baquera v. Longshore***, 948 F.Supp.2d 1258, 1262 (D. Colo. 2013).

(10th Cir. 2009) aff'd, 560 U.S. 605 (2010).  In **Dolan**, the court noted that the Supreme Court has cautioned against readily inferring  "congressional intent to limit an agency's power to get a mandatory job done merely from a specification to act by a certain time." *Id*. (quoting **Barnhart v. Peabody Coal**, 537 U.S. 149, 160 (2003).  "Absent some specifically identified consequence for failing to comply with the deadline, we are obliged to read such a statute 'as a spur to prompt action, not as a bar to the tardy completion of the business' Congress mandated."  *Id*. (quoting **Barnhart v. Peabody Coal**, 537 U.S. 149, 172 (2003).

The respondents contend § 1226(c) does not include a specifically identified consequence for the failure of immigration authorities to detain a criminal alien "when the alien is released."  Thus, the respondents assert that the better-late-than-never principle is applicable to § 1226(c) and to Mr. Andujo's detention.  I disagree.  As discussed above, § 1226(a) states the general rule that an alien detained pending a decision on removal is entitled to a bond hearing.  Subsection (c) describes particular circumstances in which the general rule of subsection (a) does not apply.  Given the structure of § 1226, the specific consequence for the failure of immigration authorities to comply with the deadline of subsection (c), "when the alien is released," is the application of subsection (a) rather than subsection (c).  Given the structure of § 1226 in this regard, I conclude that the better-late-than-never principle does not apply to subsection (c).

Subsection (c) of § 1226 is not applicable to Mr. Andujo because immigration authorities did not detain him when he was released from prison after serving his sentence for his conviction for felony possession of marijuana with intent to distribute.

Mr. Andujo does not fall within the class of aliens specified in subsection (c)(1).  Rather,

immigration authorities detained Mr. Andujo years after his release.  In this

circumstance, subsection (a) of § 1226 controls Mr. Andujo's detention by immigration

authorities.  As a result, I find and conclude that Mr. Andujo has demonstrated a

substantial likelihood of success on the merits of his claim that he is entitled to a bond

hearing under § 1226(a).

### B.  Irreparable Injury

Mr. Andujo contends he is being detained by immigration authorities and is being

denied his statutory right to a bond hearing, a hearing that may or may not result in his

release from detention on bond.  Restraint of the liberty of Mr. Andujo without the due

process mandated by § 1226(a) constitutes irreparable injury.  Monetary damages

cannot compensate Mr. Andujo for the denial of this right to due process in the context

of his detention.   The physical liberty of an individual is a fundamental right protected

by the Constitution of the United States and federal statutory law.  Deprivation of liberty

without the legally mandated due process constitutes irreparable injury.  This irreparable

injury is immediate and ongoing.

### C.  Balance of Harms

The threatened injury to Mr. Andujo is a deprivation of his liberty without the due

process mandated by § 1226(a), a bond hearing. The government concedes that it will

be relatively simple to provide Mr. Andujo with a bond hearing.  *Response* [#8], p. 14.  I

find and conclude that the harm faced by Mr. Andujo greatly outweighs the minimal

burden faced by the government, providing a bond hearing to Mr. Andujo.

The government contends also that it will be required to expend significant

resources if it must provide bond hearings to all aliens detained in circumstances similar

to those of Mr. Andujo.  This possible indirect effect of a temporary restraining order in this case is not properly considered in the balance of harms calculus.  Further, there is no factual basis in the record to assess the magnitude of this potential harm.  Finally, although compliance with the law as stated by Congress in § 1226 may impose burdens on the government, the burden of complying with the law does not weigh heavily in the balance of harms calculus.

### D.  Public Interest

Generally, compliance with the law serves the public interest.  The government contends a temporary restraining order would be adverse to the public interest because the intent of Congress in passing § 1226(c) was to ensure the detention of criminal aliens. Providing a bond hearing to Mr. Andujo, the government asserts, would be contrary to the intent of Congress.  As noted above, however, the intent of Congress must be drawn from the plain language of § 1226(c).  Taking that approach, a temporary restraining order requiring that Mr. Andujo be provided a bond hearing is consistent with, and not contrary to, the stated intent of Congress as expressed in the plain language of § 1226(a) and (c).  I find and conclude that a temporary restraining order serves the public interest and is not adverse to the public interest.

### V.  CONCLUSION & ORDERS

For the reasons specified above, I find and conclude that each of the four relevant factors weigh heavily and compellingly in favor of a temporary restraining order. Given the clear language of § 1226(c) and the facts of this case, there is heavy and compelling support for the contention of Mr. Andujo that he is entitled to a bond hearing under § 1226(a).

**THEREFORE, IT IS ORDERED** as follows:

1. That to the extent the petitioner seeks a temporary restraining order in the **Plaintiffs' Motion For Temporary Restraining Order, Preliminary Injunction, and Order To Show Cause** [#2]  filed May 30, 2014, the motion is **GRANTED**;

2. That within fourteen (14) days of the date of this order, the respondents **SHALL PROVIDE** the Petitioner, Raul Arturo Andujo-Andujo, with an individualized bond hearing under 8 U.S.C § 1226(a);

3. That as required by FED. R. CIV. P. 65(c), the petitioner **SHALL POST** with the clerk of the court a bond or other security in the amount of fifty (50) dollars on or before Monday, June 23, 2014, at 5:00 p.m. (mountain daylight time);

4. That under FED. R. CIV. P. 65(b)(2), this **Temporary Restraining Order SHALL REMAIN** in effect for fourteen (14) days from the date this order is entered;

5. That the court **RESERVES** ruling on the request for a preliminary injunction and issuance of an order to show cause, as stated in the **Plaintiffs' Motion For Temporary Restraining Order, Preliminary Injunction, and Order To Show Cause** [#2]  filed May 30, 2014; and

6. That no later than fifteen (15) days from the date this order is entered, the petitioner **SHALL FILE** with the court a status report describing briefly the status of this case and whether he intends to seek additional relief in this case.

Dated June 19, 2014, 3:50 p.m. (MDT), at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge